We're going to go on to case number four, which is 23-16-60 and 23-16-61 Passarella v. Aspirus, Inc. Of course, it is Passarella and not Y v. Aspirus. Hello, Mr. Erickson. Hello, Your Honor. Just bear with me for a second. Of course. Please take your time. I have to get my computer so the print can be large enough for me to see. Don't you worry. Just take your time. I don't think I should need it. Do you need some technical help? No. I made my argument so short that I'm confident that my computer's battery will last long enough to. Okay. If you are, whenever you feel comfortable, please. May it please the Court. Greg Erickson for Mormon, Carl and Erickson on behalf of plaintiffs Dott and Wye and Passarella. We are asking this Court to reverse the District Court's dismissal of their respective cases on a motion on a Rule 12 basis and remand that this case, both of these cases, back for discovery and trial. Before I begin, I know my time is limited, and I am sure that the courts have read the briefs, so I want to bring your attention to as many things as possible that I think might aid the court in their decision-making. One of the most important things that I want to point the court's attention to is not only am I the plaintiff's lawyer in this particular case, but I have about 150 plaintiffs, most of them in the District of Minnesota, on virtually identical wrongful termination facts. So this case is extremely important. It might be helpful for us to just kind of dive in as to, looking at Dott and Wye first, if we separate them out, what is the specific religious belief that conflicts with the vaccine mandate for her? And then we'll go to the, just so we can keep them separate tracks. Okay. For Ms. Dott and Wye, obviously we attached her entire religious objection to the complaint, which obviously is incorporated in the complaint. But to me, first of all, I've done 500 religious objections. You know, religious objections, I've helped clients with like 500. One of the main things that clients, particularly Ms. Dott and Wye, say is they didn't want to take the vaccine because she prayed about it and her conscience told her that to take the vaccine would be a sin. A person's conscience, according to Christians... In Dott and Wye, if you could just direct me to where that's in the complaint, that would be helpful. It's in her religious exemption request. Okay. Okay. It's in her religious exemption request. It's specifically in there. She specifically says that her conscience is telling her not to take the vaccine. For a Christian, we believe that our conscience comes from the Holy Spirit. Okay. There is plenty of scripture that says that if you violate your conscience, it is a sin. Part of the problem with the Aspirus religious exemption process... That's Passarella. That was her argument as to why she believed the religious exemption applied. And so in Dott and Wye, is it... Because I think that's what we're doing. We're kind of collapsing the two. And so is that the religious exemption that Dott and Wye presented as well? That's correct, Your Honor. Obviously, here's one of the huge problems with this case and one of the huge problems with the Rule 12 dismissal. First of all, what the district court was supposed to do was they were supposed to take our facts as pled and believe them and find them in our favor. What the district court did is it operated as a fact finder, not a judger of the sufficiency of pleadings at the Rule 12 stage. What the court did is it found that the fact that they say in their religious exemptions that their objections to vaccinations come from their religious beliefs. He decided to act as a fact finder without the benefit of discovery. You make that argument in your brief, Mr. Erickson. One of the things that I would benefit from in our limited time here is if you, drawing upon the experience you have in this area or otherwise, suppose you prevail and we have to write an opinion. There's not that much other circuit case law out there on this issue. There's plenty of cases in the district court. What would be the two or three sentences that, in your view, would capture the legal rule that you're asking us to adopt to discern between those religious exception requests that would allow statement of a failure to accommodate claim and those that would not? How would you articulate the rule? To be honest with you, one of the things that I was about to direct the court's attention to before Judge Pryor asked me a question. Well, my questions still haven't been answered, but that's fine. I'm so sorry. It's fine. But the thing that I was going to direct the court's attention to is, as I said, I've got 150 of these cases. 110 plus are against the Mayo Clinic. I'm sorry. I didn't get it. 110 of these cases are against the Mayo Clinic. Oh, the Mayo. I'm sorry. The largest health provider in Minnesota, maybe in the world. The reason the dismissal in this case predated the dismissal of the 110 Mayo Clinic cases in Minnesota District Court. Okay? So there's a bunch. There's decisions on both sides in Minnesota District Court. One in our favor by the Chief Judge in the Seasons Hospice case. But in the Mayo Clinic case, he relies on the analysis contained in this decision. And we've obviously appealed. Forget that. You have three minutes left, and there's a whole bunch of questions on the table. What would be the two or three sentences that you would ask us to write down that would define the legal rule that district courts throughout this circuit should apply when they get Title VII failure to accommodate claims? In Title VII, courts are required to believe the stated religious exemption objections as true at the motion to dismiss stage. Analysis of the truth or falsity, and there's a litany of case law related to this in our brief. That's the rule you want us to adopt? Because I think the district court would absolutely say, well, I totally agree with that. And then the question becomes, how do you distinguish between those exemption requests that fit within the category of a religious exemption and those that do not? And, for example, as Judge Pryor was asking you about, Ms. Dotton-Wise, the district court said quite straightforwardly that this is principally a safety-based concern. So what I'm trying to figure out is, what's the legal rule? Your Honor, there is a litany of case law cited in our brief that a person can have both scientific bases for their decision and religious bases for their decisions. But in what sense – I'm going to see if I can help a little – in what sense is the belief necessitating an exemption from the vaccine requirement a religious belief? Where is the religious doctrine here? Maybe that would help us. Your Honor, spiritual people who pray communicate with God. Focus on the document. Focus on the actual words. Right? There's no question at that level of generality that you're right. Right.  We have Exhibit A and Exhibit B from Ms. Dotton-Wise. And I think what Judge Pryor was asking you is, I'm looking at the exact words. So what words – May I approach? Well, you don't need to approach. You know the document. I mean, they're all – the whole case is about these things. Your Honor, when a client says that they've prayed about whether or not to take the vaccine and the Holy Spirit has told them not to take the vaccine – That's not what Dotton-Wise says in the exhibit. She says, I have prayed about this and have asked God for guidance and believe that he is with me on this decision. She also says, I don't trust the information and long-term effects. Therefore, I believe this is not right for me to put this vaccine into my body. So in Grisbeck v. Grisbeck, cited in our brief, it says that when the fact that a plaintiff has both scientific and religious bases for their decision-making process does not necessarily negate the religious nature of their objection. They can be combined. I would point out that the EEOC has submitted a brief, an amicus brief, in support of our Eighth Circuit appeal. And in their brief, there is countless citations to this same fact that a combination of scientific or personal beliefs and religious beliefs does not negate the existence of the beliefs themselves. If there is any religious nature to these objections, they should be sustained at the motion-to-dismiss stage. And the sincerity of the beliefs is something to be determined either at summary or judgment. So that seems to be the legal rule you're asking for. If there is any reference to religion in the exemption request, it suffices to constitute a request to accommodate. Any reference to religion. Your Honor, and that is consistent with the EEOC's guidelines. Okay, we got your rule. We got it. Okay. Okay. I think you, you know, I am going to give you your rebuttal time. So don't worry about that. Thank you, Your Honor. Thank you. Mr. Leibowitz. Thank you, Your Honor. May it please the court. My name is Chad Leibowitz, and I represent Aspyrus Incorporated in this matter. The district court properly granted Aspyrus' motion to dismiss, as the appellants, the plaintiffs, Ms. Dautenwey and Ms. Pasarela, failed to allege a sincerely held religious belief in conflict with an employment requirement. Ms. Dautenwey did say in her application for an exemption that she had read about this and to ask God for guidance and that she believes he is with her on this decision. How should that factor into our decision as to whether her objection to the vaccine is based on her religious beliefs? Yes, thank you, Your Honor. So in the context of a motion to dismiss, there's no question that you have to give the inference to the non-moving party. But I would also draw the court's attention to the fact that in considering and evaluating a motion to dismiss, it has to be a context-specific activity, and you employ both judicial experience and common sense. If you go back and look at Ms. Dautenwey's submissions, which in total I believe her original exemption was essentially a short paragraph, the vaccine was made in a rush. The information on long-term health effects, we don't have enough information, and I don't want to put that in my body. And no one should have to tell me what to do with my personal being. That is the crux and that is the foundation of Ms. Dautenwey's request. It's medical. It's a personal belief. I think it's important for this court to keep in mind, too, the mere use of religious vocabulary does not elevate a religious belief or, excuse me, a personal medical belief does not elevate that to a sincerely held religious belief that's protected by Title VII. Going to Judge Scudder's point, at what level of generality, I guess, of belief should we evaluate this under then? I'm sorry. Judge Scudder raised a point that this level of generality, right, in getting to the and how should we evaluate the conflict or the purported conflict between an employee's religious objection and then the employer's requirement? Your Honor, I think that goes back to that context-driven analysis of common sense and judicial experience. If you look at her submissions, it jumps off the page off of her exemption of what her real justification is for submitting this request to escape from the vaccine. The I pray to God and I believe he is with me is not a very strong statement of faith, and there's no direct link between that employment requirement and that sincerely held religious belief. If the vaccine was safe, there would be no objection. Are you saying that somewhere there would have to have been something regarding religious doctrine? No, Your Honor. Here's an example. I think you have examples throughout the Seventh Circuit, and you actually even have an example of a properly pled complaint even in this case. So I'll look at a daiya, and when the court's evaluating that, we have specific requests. There was a description of a family history and religion, and this individual had to travel out of country to participate in a spiritual ritual. That's one example that's already been decided at the Seventh Circuit. As well, if you recall, there was a decision at the district court level in this matter. It was Ms. Passarella. It was Ms. Dotline. But there was also a third plaintiff, Ms. Clutter. And Ms. Clutter's motion to dismiss against filed by Aspiris was denied, and the district court did in that analysis, it drew a distinction between Ms. Passarella, Ms. Dotline, and Ms. Clutter. And what he said about Ms. Clutter was that she specifically addressed how the religious belief affected her life, and that was she was not vaccinated, she didn't believe it, and it was her sincere religious belief that their family wanted their body the way God made them. That's just another example of something else. How is it distinct from Ms. Passarella, who the statement was made in her exemption that she did not take prescription drugs, she did not take over-the-counter drugs, she believed that she needed to keep her body healthy, and for those reasons, going back to her faith, her conscience had told her that if you go against your conscience, it's a sin, and God had told her that the vaccine was unsafe. I would categorize Ms. Passarella's description because, admittedly, she submitted a five-page exemption request, far more than Ms. Dotline. But if I could summarize the reason for her exemption request is I focused on me, the individual. I make shrewd decisions about these vaccines. You'll go through Ms. Passarella's request, and it's got very similar general themes. My conscience doesn't allow me to take the vaccine or to take this vaccine. My body, my temple, and God is my ultimate protector and healer. Those are very general themes. She does give specifics now. She does say, I had the COVID vaccine, and I survived. There was other family members, and I saw God's great work with respect to healing and protecting, and I saw unfortunate situations as well. Then Ms. Passarella concedes that she actually takes vaccines, and it all falls on her, quote-unquote, shrewd decisions with respect to vaccines. There's no link. On one hand, you have Dotline, who is my body, my right. Again, the focus is solely on that individual. Then you have Ms. Passarella, who is based on my shrewd decisions. Mr. Leibniz, how would you capture the rule that you propose that we adopt? It's not going to be all that helpful to the district courts if we say, take them one at a time. There's about 1,000 cases out there. I don't know that I'm articulating a different rule, Your Honor. I'm just saying there's got to be a direct link between a sincerely held religious belief and the employment requirement. I think that what we're asking for is consistent with the Seventh Circuit precedents and many of these other cases, not only with the vaccine cases. Because one of the things that worries me, and I benefit from your reaction to this, is that what we're engaged in here is we're looking at these requests from somebody that works in a pharmacy and a nurse, and we're parsing them and putting them under a microscope like we would a regulation implementing the income tax code. I really wonder whether these individuals, in keeping with what Mr. Erickson is, I think, essentially arguing, that why shouldn't they get all the benefit of the doubt at the pleading? These are not sworn affidavits submitted under penalty of perjury where every word is carefully selected. I think that's what the district courts are going to wonder from our court when it comes to writing an opinion here. How do we sort those that do adequately come forward with a religious exemption request under a failure to accommodate claim and those that do not? There's no question that the COVID vaccines present a new phenomenon. We've only been dealing with this for the last several years. But I would answer the court's question with respect to there's examples out there in the Third Circuit where there's an application of the flu vaccine to very similar situations. So you have to look at the pleadings themselves. You have to evaluate, did they allege the sincerely held religious belief in contrast with the employment requirement? I'd also highlight the fact that there's been much effort by the plaintiffs and appellants to fill the holes with respect to allegations on the sincerely held religious belief. And I'll give you one example from their brief, which is document 9, page 37. There's a statement, an allegation argument that says all major religions are against self-harm or suicide. Passerelle and Datouin, as Christians, hold these same beliefs and are not to harm themselves. It is part of the commandment, thou shall not kill. The only problem with that, your honors, is that was never alleged in the exemption request. It certainly wasn't alleged in the original complaints. You have a situation through the district court and the court of appeals where somebody is trying to retroactively make allegations against this virus here. And just from a procedural standpoint, that's inappropriate. Thank you, your honor. I see my time is up. If I'm happy to answer any further questions the court may have. Thank you very much. Thank you. And let's see. Mr. Erickson asked for three minutes and we're going to give him the three minutes. Thank you, your honor. I want to get as much in as I possibly can. First of all, I'm sitting here watching the court parse apart the religious exemptions of these two employees. And what it makes me think is the reason why we are doing this, your honor, is because this employer breached their obligations under Title VII to engage in an interactive process with their employees to determine the nature of their religious beliefs. This is why the EEOC got involved in the Mayo case. And it is replete in their brief that basically this entire slew of COVID terminations, your honors, none of them, none of these employers took the time to engage in an interactive process with their employees. And what happens, your honor, is you benefit the better writers in lieu of the inferior writers. Because let's just say my daughter is a better writer than me, your honor. She's a better writer. Does that mean she's more religious than I am because she can communicate in writing better than I can? Or perhaps if you have an interactive process, you can take the time to engage. Let's say Ms. Dotton-White. Okay. Ms. Dotton-White, let's just say she's not a very educated writer. She's an extremely religious person. But the thing is she's scared to death. She's afraid for her job. And she chokes. Let's just say she choked on her religious exemption request. Does that mean she has to lose her job, particularly if there are requirements under Title VII, your honors? None of them were followed here. They have a requirement for an interactive process. They could have interviewed Ms. Dotton-White and they could have asked her. And you know what?  What you're doing in this case, if you affirm, is you are rewarding breaching their obligations under Title VII. This court can't do that. The proper rule is that at the early stage, any reference to religion has to be believed by the employer and you have to engage in an interactive process so as to determine if these beliefs are completely unfounded. I want to point out that the main cases relied on by the district court, Fallon, it relates to a made-up religion in an essay. Africa, a prison church and the church of raw vegetables. USB Myers, the church of marijuana. Sesdari, the church of eating cozy cat food. And then another cat food case. This was the state of the law before COVID and these vaccine terminations. All religious exemptions to the flu vaccine were honored everywhere. They were honored virtually unanimously throughout all health care facilities. The COVID vaccine is an outlier. So basically in all of these cases, this is what it took to get rid of a case at the motion to dismiss stage. Raw vegetables, marijuana, made-up religion. Your Honors, these people are Christians. The Christian faith believes in God and a higher power and certainly an allegation of a Christian faith and a religious exemption certainly merits an interactive process by which these folks can explain verbally why their objections to vaccination for religious objections conflict with the requirement. The defendants want to reward violating Title VII. This court should not and hopefully cannot do that. Thank you. Thank you very much. Thank you to both Mr. Erickson and Mr. LaVance. And the case will be taken under advisement. Thank you.